1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT
9                  CENTRAL DISTRICT OF CALIFORNIA
10
11   CAMERON ROSS MCGLOTHEN,          Case No. 2:15-cv-204-GJS
          Plaintiff
12
          v.                          **MEMORANDUM OPINION AND
13                                     ORDER**
     CAROLYN W. COLVIN, Acting
14   Commissioner of Social Security,
15             Defendant.
16                          **INTRODUCTION**

17       In this social security benefits appeal, McGlothen argues that the ALJ (1)

18   improperly applied res judicata to a prior August 2010 decision, and (2) that

19   McGlothen suffers from a listed impairment entitling him to receive benefits at Step

20   Three.[1]  The Court agrees with McGlothen that the ALJ improperly invoked res

21   _____

22

23   [1] To decide if a claimant is entitled to benefits, an ALJ ordinarily conducts a five-
     step inquiry.  20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:  (1) Is the
24   claimant presently engaged in substantial gainful activity?  If so, the claimant is
     found not disabled.  If not, proceed to step two; (2) Is the claimant's impairment
25   severe?  If not, the claimant is found not disabled.  If so, proceed to step three; (3)
     Does the claimant's impairment meet or equal the requirements of any impairment
26   listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found
     disabled.  If not, proceed to step four; (4) Is the claimant capable of performing his
27   past work?  If so, the claimant is found not disabled.  If not, proceed to step five; (5)
     Is the claimant able to do any other work?  If not, the claimant is found disabled.  If
28

judicata, but finds that doing so was harmless error.  Further, the Court finds that the ALJ's determination that McGlothen suffers from no listed impairment is not supported by substantial evidence.  Accordingly, the Court remands to the ALJ to determine whether Listing 12.05C was satisfied, given the record evidence of McGlothen's diagnosed mental retardation, his concededly low IQ score, and the ALJ's finding of other severe impairments.

## PROCEDURAL HISTORY

On September 16, 2008, McGlothen applied for supplemental security income, alleging that he became disabled as of August 31, 2008.  [Admin. Rec. ("AR") 63.] After denials on initial review and reconsideration, an ALJ held a hearing on July 26, 2010, at which McGlothen was unrepresented.  [AR 42-59, 63.]  One month later, the ALJ concluded that McGlothen had not been disabled as of September 16, 2008.  [AR 60-71.]

McGlothen filed a second application on March 4, 2011, again alleging disability based on mild retardation since August 31, 2008.  [AR 143, 167.]  McGlothen's claim was denied on initial review and reconsideration on June 22 and October 18, 2011, respectively.  [AR 96-101, 103-07.]  On September 11, 2012, the ALJ held a hearing, where McGlothen was again unrepresented.  [AR 31-41.]  On November 28, 2012, the ALJ issued an opinion finding McGlothen not disabled.  [AR 21-27.] The Appeals Council denied administrative review, and McGlothen appealed here. [AR 2-7.]

---

so, the claimant is found not disabled.  20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

**GOVERNING STANDARD**

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

Even if McGlothen shows the ALJ committed legal error, "[r]eversal on account of error is not automatic, but requires a determination of prejudice." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). And "[w]here harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm." *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011).

That said, the burden of showing harm is still low. "Where the circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so that the agency can decide whether re-consideration is necessary. By contrast, where harmlessness is clear and not a borderline question, remand for reconsideration is not appropriate." *Id.* at 888. Courts have "affirmed under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). In sum, "ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination' and … 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have

3

1   reached a different disability determination.'"  *Marsh v. Colvin*, 792 F.3d 1170,

2   1173 (9th Cir. July 10, 2015) (quoting *Stout*, 454 F.3d at 1055-56).

3       To determine whether an error was harmless, this Court may consider "the

4   likelihood that the result would have been different" and "the impact of the error on

5   the public perception of such proceedings." *Ludwig*, 681 F .3d at 1054.  It may not,

6   however, "appl[y] harmless error in a way that affirm[s] the agency on a ground not

7   invoked by the ALJ."  *Marsh*, 792 F.3d at 1172.  Ultimately, "[t]he nature of [the]

8   application [of the harmless error doctrine] is fact-intensive—'no presumptions

9   operate' and '[the Court] must analyze harmlessness is light of the circumstances of

10  the case.'"  *Id.* (quoting *Molina,* 674 F.3d at 1121).


### DISCUSSION

**I.    The ALJ Erroneously Applied Res Judicata to McGlothen's August 26, 2010 Decision.**

15      The ALJ's opinion summarized McGlothen's prior application history as

16  follows:

> The claimant filed a prior application for supplemental
> security income on September 16, 2008, which was
> denied by Administrative Law Judge[] Robert A. Evans[]
> in a decision dated August 26, 2010 (Exhibit B-1A).  He
> did not request a review.

21  [AR 23.]  The ALJ then set forth his understanding of Ninth Circuit law on the

22  preclusive effect of prior administrative proceedings: "[T]here is a presumption of

23  continuing nondisability following the period previously adjudicated based on the

24  principles of res judicata" that may be rebutted by "proving 'changed circumstance'

25  indicating a greater disability."  [*Id.*]  The decision expressed that "the principles of

26  res judicata require the Administrative Law Judge to adopt the findings from the

27

28

prior decision unless there is new and material evidence relating to such findings." [*Id.*]  Then, it concluded that circumstances had not changed.  [*Id.*]

McGlothen argues that the ALJ erred by applying res judicata because he had been unrepresented at the prior social security proceeding.  The Court agrees. "Normally, an ALJ's finding that a claimant is not disabled 'creates a presumption that the claimant continued to be able to work after that date.'"  *Vasquez v. Astrue*, 572 F.3d 586, 597 (9th Cir. 2009) (quoting *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995)); *see Chavez v. Bowen*, 844 F.2d 691, 694 (9th Cir. 1988).  But the presumption does not apply "where the claimant was unrepresented by counsel at the time of the prior claim."  *Lester*, 81 F.3d at 828.[2]

Here, the presumption was erroneously applied.  The record reflects that McGlothen represented himself during his filing of the 2008 application, or at least at the July 26, 2010 hearing.  [*See* AR 63 ("Although informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative."); *see also* AR 33 (ALJ noting that "[he] met [him] about two years ago" and that McGlothen "ha[s] waive[d] representation again").] Accordingly, under Ninth Circuit precedent, the ALJ could not apply res judicata to the August 26, 2010 decision finding McGlothen not to be disabled.

The Commissioner does not appear to seriously contest McGlothen's claim. Rather, the Commissioner argues that "[b]ecause there were no significant 'changed

_____

[2] The Ninth Circuit's case law is unclear on whether an ALJ may apply res judicata, even to a decision rendered when claimant was unrepresented, if the record is adequately developed.  *Compare Lester*, 81 F.3d at 828 *with Schuff v. Astrue*, 327 Fed. App'x 756, 757 (9th Cir. 2009) (unpublished) ("Although Schuff was not represented by counsel at her previous proceedings, the ALJ's application of res judicata was appropriate. The record from Schuff's previous claim is well developed."); *see also Thompson v. Schweiker*, 665 F.2d 936, 941 (9th Cir. 1982). Given that *Lester* does not appear to prescribe that additional limitation, this Court will not either.

5

circumstances' between the two decisions, the ALJ in the present matter properly treated the prior decision as res judicata creating the presumption that Plaintiff was not disabled for the period under consideration beginning February 11, 2011, the filing date of his second application for SSI disability."  [Dkt. 25, Def.'s Br., at 3.]  As *Lester* makes clear, that McGlothen was unrepresented is itself sufficient to negate applying res judicata; McGlothen need not also show that changed circumstances existed.  In short, the Commissioner's argument is a red herring, and the ALJ's reliance on res judicata was error.

The question now turns to whether the ALJ's error requires remand.  Neither party has briefed whether the inappropriate application of res judicata constitutes harmless error here, but this Court must now consider the issue.  *See, e.g.*, *Cha Yang v. Comm'r of Soc. Sec. Admin.*, 488 Fed. App'x 203, 204 (9th Cir. 2012) ("The administrative law judge (ALJ) failed to cite Yang's changed circumstances and thus misapplied the res judicata principles set forth in *Chavez v. Bowen,* 844 F.2d 691, 693 (9th Cir. 1988).  In formulating Yang's residual functional capacity (RFC), however, the ALJ in fact weighed Yang's medical evidence. Any error was therefore harmless."); *Johnson v. Astrue*, 358 Fed. App'x 791, 793 (9th Cir. 2009) (concluding that ALJ's conclusory footnote that new evidence did not change opinion did not render erroneous application of res judicata harmless).

There are good reasons to find that the ALJ's error was not harmless, *i.e.*, that is resulted in a "substantial likelihood of prejudice." *McLeod,* 640 F.3d at 888.  First, the ALJ believed there to be a "presumption of continuing nondisability," when in fact no such presumption existed.  [*See* AR 23.]  Second, based on the hearing transcript, the Court believes the ALJ held an abbreviated hearing that focused on the post-August 2010 facts, not recognizing that the ALJ had a duty to consider *de novo* each of the five steps.  The ALJ did not hear from treating physicians, or consult an independent medical or vocational expert.  Third, remanding would ensure that "the decision on disability rests with the ALJ and the Commissioner of

6

the Social Security Administration in the first instance, not with a district court." *Marsh*, 792 F.3d at 1173.

That all said, the Court finds that, on the whole, the invocation of res judicata appears to be harmless error. The extent to which the ALJ actually relied on res judicata is unclear. The decision under review does not refer to prior findings, other than to mention that as of August 26, 2010, "the claimant retained the ability to perform basic unskilled work at all exertional levels." [AR 23.] The ALJ proceeded with a review of the medical evidence—a review that approximated the traditional five-step approach. And McGlothen has not proffered any evidence that the ALJ excluded from consideration.

Although McGlothen's brief is unclear, it appears that he may be attempting to explain that the harm from the erroneous res judicata application was that the ALJ presumed that McGlothen did not suffer from a listed impairment. The opinion itself belies that contention; the ALJ independently analyzed whether McGlothen suffered from a listed impairment. In fact, the ALJ considered new evidence relevant to the Step Three determination. [*See* AR 24-25.] McGlothen's areas of disagreement appear to be an attack on the Step Three reasoning, not on any effect of the ALJ's res judicata ruling.

McGlothen may also be attempting to argue that res judicata should not bar the ALJ and the Court from considering McGlothen's "mild mental retardation" as a severe impairment. [*See* Dkt. 24, Pl.'s Br., at 6, 7 n.1.] But as McGlothen points out, the ALJ did not apply res judicata to bar evidence of "mild mental retardation" because he did not evaluate Listing § 12.05(c) at all.[3] In short, McGlothen identifies no erroneous conclusion produced by the *purported* reliance on res judicata.

_____

[3] Of note, McGlothen does not separately ask the Court to remand based on a failure to identify a specific severe impairment at Step Two. Nor would such a request be well founded; once a claimant makes it through Step Two's gateway threshold, all

1    **II.     The ALJ's Decision that McGlothen Does Not Qualify For Disability**
2    **Benefits Under Listed Impairment 12.05C Is Not Supported by**
3    **Substantial Evidence.**

4    Supported by a detailed discussion of Listing 12.04, the ALJ concluded that

5    "[t]he claimant does not have an impairment or combination of impairments that

6    meets or medically equals the severity of one of the listed impairments in 20 CFR

7    Part 404, Subpart P Appendix 1[.]"  [AR 24.]  Here, McGlothen asks this Court to

8    find that the record indisputably supports a finding that he fell within Listing 12.05C

9    based on McGlothen's diagnosis of mild mental retardation—a ground the ALJ did

10   not expressly consider.  If McGlothen is correct, the five-step inquiry stops, and "he

11   is presumed unable to work and is awarded benefits without a determination

12   whether he actually can perform his own prior work or other work."  *Kennedy v.*

13   *Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S.

14   521, 531 (1990)) (internal quotation marks omitted)).

15   "Listing 12.05C has three main components: (1) subaverage intellectual

16   functioning with deficits in adaptive functioning initially manifested before age 22;

17   (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing

18   an additional and significant work-related limitation."  *Id.*  The Commissioner does

19   not dispute that the first two prongs are satisfied, i.e., she admits "Plaintiff is correct

20   that he had an IQ score of 68 prior to age 22."  [Def.'s Br. at 5.][4]  Thus, the only

21

22   _____

23   impairments—severe and not severe—are considered.  *See Webb v. Barnhart*, 433
24   F.3d 683, 687 (9th Cir. 2005) (describing Step Two as "a de minimis screening
     device [used] to dispose of groundless claims" (internal quotation marks and
25   citations omitted)).

26   [4] Even without the concession, the record reflects that McGlothen has a full scale IQ
     below 70, and that his mental disability initially manifested before the age of 22.
27   [AR 235 (reflecting IQ test score of 68 at age 15).]  Indeed, two IQ tests, performed
     six years apart, report the same result.  [*Id.*; AR 274 (IQ test score of 67 at age 21).]
28   Ordinarily, the ALJ must determine the validity of an IQ score, but here, the

8

1  question is whether McGlothen suffered from "a physical or other mental
2  impairment causing an additional and significant work-related limitation."

3      The Court cannot say, based on the record before it, that McGlothen has not.  A
4  significant work-related limitation exists "when its effect on a claimant's ability to
5  perform basic work activities is more than slight or minimal." *Fanning v. Bowen*,
6  827 F.2d 631, 633 (9th Cir. 1987).  Particularly important here, the Ninth Circuit
7  also adopted another circuit's conclusion that a "finding of severity **automatically**
8  **satisfied** the more than slight or minimal effect standard." *Id.* at 633 n.3 (emphasis
9  added) (citing *Nieves v. Sec'y of Health & Human Servs.*, 775 F.2d 12, 14 (1st Cir.
10 1985).[5]  *But cf. McGill v. Callahan*, 127 F.3d 1105 (9th Cir. 1997) (assuming
11 *arguendo* "that a severe impairment at step two of the sequential disability analysis
12 necessarily satisfies Listing 12.05C").

13      Here, the Court need look no farther than the ALJ's opinion to find this final
14 prong almost satisfied.  The ALJ found that McGlothen suffered from the "severe
15 impairment" of "mood disorder, NOS, drug/alcohol abuse in reported remission."
16 [AR 23.]  And as the ALJ himself explains, "[a]n impairment … is 'severe' within
17 the meaning of the regulations if it significantly limits an individual's ability to
18 perform basic work activities."  [AR 22.]  Thus, under *Fanning*, the work-related
19 impairment is significant, and it clearly is a separate physical or mental impairment
20 from McGlothen's intellectual impairment.

21      Given the foregoing analysis, the ALJ's denial of benefits, and more specifically,
22 his decision that McGlothen does not have a listed impairment, is not supported by
23 substantial evidence.  In fact, the record nearly compels an opposite conclusion.

_____

26  Commissioner's concession makes such a determination unnecessary.

27  [5] The Ninth Circuit further explained that "a finding of severity is not required to
28  satisfy the more than slight or minimal effect standard." *Id.*

This Court would order benefits without remand, were it not for one issue to be resolved: whether the mood disorder (or other identified significant impairment) caused work limitations beyond those imposed by McGlothen's intellectual impairment. The chances that McGlothen's intellectual impairment produces the same limitation as his other severe impairments are small, but not so small that a remand for benefits would be appropriate. That narrow factual issue requires remand for additional administrative proceedings. *See Treichler v. Comm'r*, 775 F.3d 1090, 1101 (9th Cir. 2014) (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved").

## CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that Judgment be entered reversing the Commissioner's decision and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion and Order.

**IT IS HEREBY ORDERED.**

DATED: September 29, 2015

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

10